**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GOOD GUY FRANCHISE LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NORTHERN INVASION, INC. and BRIAN O'CONNELL,**<br><br>**Defendants.** | **Civil Action No.: 25-18274 (ES) (JBC)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Good Guy Franchise LLC's ("Plaintiff") motion for default judgment against Defendant Brian O'Connell. (D.E. No. 8). The motion is unopposed. The Court has carefully considered Plaintiff's submissions, as well as the balance of the record, and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court **GRANTS** Plaintiff's motion **IN-PART**.

## I. BACKGROUND[1]

"On or about December 20, 2018, Plaintiff and Defendant, Northern Invasion, [Inc. ("Northern Invasion")] entered into a written Franchise Agreement for the operation of a Good Guy Vapes franchise location in Charleston, South Carolina (the 'Franchise Agreement')." (Compl. ¶ 6). "Pursuant to Sections 6.1.2 and 6.1.4 of the Franchise Agreement, Defendants are required to pay: (i) Continuing Royalty Fees, calculated weekly as a percentage of Gross Revenue;

[1] The Court has drawn the background described herein from Plaintiff's Complaint, (D.E. No. 1 ("Compl.")), as it must accept Plaintiff's factual allegations—other than those related to damages—as true by virtue of Defendants' default. *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 820 (D.N.J. 2021).

and (ii) Brand Fund Fees, equal to one percent (1%) of Gross Revenue." (*Id.* ¶ 7). "Pursuant to Section 6.1.14 of the Franchise Agreement, all overdue amounts bear interest at 18% per annum (1.5% per month) until paid." (*Id.* ¶ 8). Plaintiff alleges that Defendant O'Connell "executed the franchise documents as the Franchisee's principal and guarantor, and is therefore personally responsible for [Northern Invasion's] obligations under the Franchise Agreement, including payment of sums owed." (*Id.* ¶ 14).

Plaintiff alleges that, "[b]eginning in August 2022, Defendants stopped paying the required weekly fees. Plaintiff's detailed account records demonstrate that Defendants accrued $94,034.88 as of early-2023." (*Id.* ¶ 9). "On November 20, 2025, Plaintiff issued a Notice of Default with Limited Opportunity to Cure, notifying Defendants of their material breaches, including failure to pay required fees in violation of Sections 6.1.2, 6.1.4, and 14.3 (the 'Notice')." (*Id.* ¶ 10). In accordance with Section 18.3.1 of the Franchise Agreement, the Notice provided Defendants with five days to cure those breaches. (*Id.* ¶ 11). Defendants failed to timely cure and, "[a]s a result, the Franchise Agreement terminated in accordance with Section 18.3.1, and all amounts became immediately due and payable, together with interest at 18% per annum." (*Id.* ¶ 12). Plaintiff alleges that Defendants have not paid the amounts owed under the Franchise Agreement and guaranty. (*Id.* ¶ 13).

## II. PROCEDURAL HISTORY

Plaintiff filed its Complaint on December 8, 2025, asserting three causes of action against Defendants: (i) Breach of Contract against Defendant Northern Invasion concerning its default under the Franchise Agreement; (ii) Breach of Contract against Defendant O'Connell concerning the personal responsibility he undertook to satisfy Northern Invasion's obligations under the Franchise Agreement; and (iii) account stated against both Defendants. (*Id.* ¶¶ 16–28). The record

reflects that Plaintiff effectuated service on Defendant O'Connell on or about December 9, 2025. (D.E. No. 6). Defendant O'Connell did not file a timely response to the Complaint, and Plaintiff filed a request for the entry of default against him on February 5, 2026. (D.E. No. 7). The Clerk of the Court entered default against Defendant O'Connell on the same date.

Plaintiff filed a Motion for Default Judgment against Defendant O'Connell on February 18, 2026. (D.E. No. 8). To date, Defendant O'Connell has not opposed that motion or otherwise participated in this matter.[2]

## III. LEGAL STANDARD

A district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). "[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citation omitted). "Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-0119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). Then, "the Court must determine (1) whether there is sufficient proof of service; (2) whether a sufficient cause of action was stated; and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (citations omitted). In making these determinations, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). "While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages

[2] The Court notes that Plaintiff has not requested the entry of default against Defendant Northern Invasion. Indeed, it is unclear from the record whether Plaintiff has effectuated service on Northern Invasion.

determination may be made without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgement." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (citation modified).

## IV. DISCUSSION

### A. Jurisdiction

#### i. Subject Matter Jurisdiction

The Court is satisfied that it has subject matter jurisdiction over this case. District courts have original jurisdiction over all civil actions in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and that are between citizens of different States. 28 U.S.C. § 1332(a). A corporation is deemed a citizen of every State where it is incorporated and of the State of its principal place of business. *Id.* § 1332(c). A limited liability company maintains the citizenship of each of its members. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). The citizenship of a natural person is determined by the state in which the person is domiciled. *Id.* at 104.

When filing the Complaint, Plaintiff asserted that subject matter jurisdiction was appropriate under § 1332(a) based upon the complete diversity of the parties and its contention that the amount in controversy exceeded $75,000. (Compl. ¶ 4). The record indicates that Plaintiff is a limited liability company, and that both of its members are New Jersey residents. (D.E. No. 4). Plaintiff is, therefore, a New Jersey resident for diversity purposes. *Lincoln Ben. Life Co.*, 800 F.3d at 105. Defendant Northern Invasion is a South Carolina corporation with its principal place of business in Charleston, South Carolina. (Compl. ¶ 2). Defendant O'Connell is an individual who resides in New York. (*Id.* ¶ 3). The Court therefore finds that there is complete diversity of citizenship between Plaintiff and all Defendants. Turning to the amount in controversy, Plaintiff

seeks recovery of recurring fees in the principal amount of $94,034.88, together with contractual prejudgment interest. (*Id.* ¶¶ 20, 24). Given the amount in controversy and the complete diversity of citizenship between Plaintiff and all Defendants, the Court finds that it has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

**ii. Personal Jurisdiction**

The Court next finds that it may exercise personal jurisdiction over Defendant O'Connell. Effective service of process is the mechanism by which the court itself obtains personal jurisdiction over a defendant. *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant."). As shown below, the Court finds that Plaintiff properly effected service on Defendant O'Connell.

Additionally, forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972). Here, Section 21.5 of the Franchise Agreement stated, in relevant part:

> 21.5 Venue – The Parties further agree that venue for any proceeding relating to or arising out of this Agreement will be the state and or federal courts . . . located in Essex County, New Jersey . . . . The Parties, hereby irrevocably submit themselves to the sole and exclusive jurisdiction of the state courts of the Commonwealth of New Jersey, and the Federal District Court for the District of New Jersey. The Parties hereby waive all questions of personal jurisdiction for the purpose of carrying out this provision.

(D.E. No. 8-2 ("Iqbal Aff.") at 52 (ECF Pagination)). Thus, Northern Invasion agreed to litigate in this forum and consented to personal jurisdiction herein. Defendant O'Connell executed a "Franchisee's Principal Guaranty" (the "Guaranty") wherein he "individually ma[de], agree[d] to be bound by, and agree[d] to perform, all of the covenants, representations, warranties and

agreements of [Northern Invasion] as set forth in the Franchise Agreement." (*Id.* at 64 (ECF Pagination)). The Court therefore finds that Defendant O'Connell consented to personal jurisdiction in this District by signing the Guaranty. *See Baymont Franchise Sys., Inc. v. Lake Shore Hosp. Inc.*, No. 24-03253, 2025 WL 606166, at *3 (D.N.J. Feb. 25, 2025) (finding personal jurisdiction over a defendant who consented to a forum selection clause through a personal guaranty).

**B. Proper Service**

The Court finds that Plaintiff properly effectuated service on Defendant O'Connell. Under the Federal Rules of Civil Procedure, an individual may be served in a judicial district of the United States by either of the following methods: "(A) delivering a copy of the summons and of the complaint to the individual personally; [or] (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]" Fed. R. Civ. P. 4(e)(2).

Here, the record reflects that Plaintiff served Defendant O'Connell by leaving a copy of the Summons and Complaint with a co-tenant of suitable age at O'Connell's residence. (D.E. No. 6). That constitutes effective service under Federal Rule of Civil Procedure 4(e)(2).

**C. Sufficient Cause of Action**

Plaintiff seeks a final judgment by default against Defendant O'Connell *only*. Plaintiff has raised two causes of action against Defendant O'Connell: (i) a breach of contract claim in connection with O'Connell's obligations under the Guaranty; and (ii) an "account stated" claim derived from the same obligations. (Compl. ¶¶ 21–28). Upon reviewing Plaintiff's factual allegations, the Court finds that it has sufficiently stated viable claims against Defendant O'Connell.

Under New Jersey law,[3] a plaintiff must prove four elements to establish a breach of contract:

> [F]irst, that the parties entered into a contract containing certain terms; second, that [the] plaintiff did what the contract required [the plaintiff] to do; third, that [the] defendant did not do what the contract required [the defendant] to do, defined as a breach of the contract; and fourth, that [the] defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff.

*Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). Here, Plaintiff alleges that: (i) the parties entered the Franchise Agreement and Guaranty, (Compl. ¶¶ 6–8, 14–15); (ii) Defendants violated the terms of the Franchise Agreement and Guaranty by failing to pay the amounts owed thereunder, (*id.* ¶¶ 9–13); (iii) Plaintiff "fully performed its obligations under the Franchise Agreement[,]" (*id.* ¶ 18), and (iv) Plaintiff has been damaged by Defendants' failure to pay, (*id.* ¶¶ 10, 24, 28). Considering that the Clerk of the Court entered default against Defendant O'Connell, and that factual allegations are, therefore, "treated as conceded by the defendant for purposes of a default judgment," *DIRECTV,* 431 F.3d at 165, the Court finds that the record supports Plaintiff's claim for breach of contract.

As the damages associated with Plaintiff's "account stated" claim would be duplicative of those flowing from Defendants' breach of contract, the Court does not separately address the "account stated" claim herein.

**D. Propriety of Default Judgment**

The Court next finds that it would be appropriate to enter a default judgment against Defendant O'Connell. To determine whether granting default judgment is proper, the Court must

[3] In Section 21.4 of the Franchise Agreement (applicable to Defendant O'Connell pursuant to the Guaranty), Plaintiff and Northern Invasion agreed that New Jersey law would apply to any disputes related to the Franchise Agreement. (Iqbal Aff. at 52 (ECF Pagination)).

make factual findings as to "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008). Here, Defendant O'Connell has never appeared, let alone responded to the Complaint, and thus nothing in the record suggests that he might have a meritorious defense against Plaintiff's claims. *See Malibu Media, LLC v. Deleon*, No. 15-3855, 2016 WL 3452481, at *3 (D.N.J. June 20, 2016) ("The Court may presume that a defendant who has failed to plead, defend, or appear has no meritorious defense."). Moreover, Defendant O'Connell's failure to participate in this case has prejudiced Plaintiff, which has no other way to recover damages flowing from his breach of contract. *See Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding that the plaintiff would suffer prejudice if the court did not enter default judgment because the plaintiff "has no other means of seeking damages for the harm allegedly caused by [the d]efendant"). Finally, with respect to whether Defendant O'Connell's default was the result of his own culpable conduct, the Court notes that he has not participated in the litigation despite being properly served with the Complaint in December of 2025. (D.E. No. 6). Indeed, nothing in the record suggests that Defendant O'Connell's failure to participate in this case has been due to anything *other* than his own willful conduct. *See, e.g.*, *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (noting that the defendant is culpable when there is nothing suggesting that anything other than the defendant's willful negligence caused the failure to answer). Based upon the foregoing, the Court finds that it would be appropriate to issue a default judgment in this case.

**E. Damages**

The only allegations in a plaintiff's complaint not treated as true upon the entry of a default judgment are those pertaining to the amount of damages. *Comdyne I, Inc.*, 908 F.2d at 1149. Under Federal Rule of Civil Procedure 55(b)(2), a district court "may conduct such hearings or order such references as it deems necessary and proper", *id.*, in order "to determine the amount of damages." Fed. R. Civ. P. 55(b)(2). If, however, the damages are for a "sum certain or a sum that can be made certain," further evidentiary inquiry is not necessary. Fed. R. Civ. P. 55(b)(1); *Comdyne I*, 908 F.2d at 1149. Here, Plaintiff seeks to recover unpaid fees owed under the Franchise Agreement and Guaranty, as well as contractual prejudgment interest and an award of attorneys' fees.

**a. Outstanding Fees**

The Court first considers Plaintiff's request for various fees owed under the Franchise Agreement. Regarding those fees, Plaintiff's Chief Executive Officer has averred. "Under the Franchise Agreement, Defendants were required to pay: (i) continuing royalty fees calculated weekly as a percentage of gross revenue; and (ii) brand fund fees equal to one percent (1%) of gross revenue." (Iqbal Aff. ¶ 6 (citing Franchise Agreement §§ 6.1.2 & 6.1.4)). Plaintiff represents that Defendants failed to pay those fees beginning in or about August 2022. (*Id.* ¶ 8). According to Plaintiff's business records, Defendants accrued a principal, outstanding balance "of no less than $94,034.88 in unpaid royalties, brand fund fees, and related charges." (*Id.* ¶ 10; *id.* ¶ 14, Ex. 2 (Plaintiff's account ledger for Defendant Northern Invasion)). Further, the Franchise Agreement provides that interest will accrue on any such outstanding amounts "from the date due until paid at the rate of 1.5% per month or at the highest rate permitted by law, whatever is lower." (*Id.* at 13 (ECF Pagination)).

Here, Plaintiff has not provided the Court with a proposed interest calculation. Based on the motion record, however, it appears that the total outstanding balance of $94,034.88 "became due" on November 1, 2025. (*Id.* at 94 (ECF Pagination)). The Court will, therefore, use that date when calculating the prejudgment interest that has accrued under the Franchise Agreement. It therefore appears that Plaintiff is entitled to recover interest totaling $15,441.21 through the date of judgment. The $15,441.21 figure is calculated by multiplying $94,034.88 by 18% per year (1.5% per month multiplied by 12), which equals $16,926.28 in interest per year. That amount is then divided by 365 days to equal $46.37 in interest per day. When the per diem interest of $46.37 is multiplied by 333 days (the span between November 1, 2025, and the date of this Opinion), the interest owed equals $15,441.21.

The Court therefore finds that Plaintiffs have established an entitlement to recover fees owed under the Franchise Agreement (inclusive of interest) in the total amount of $109,476.09 (principal of $94,034.88 plus $15,441.21 in interest).

**b. Attorneys' Fees**

The Court next turns to Plaintiff's request for an award of attorneys' fees. Pursuant to Section 19.1.5 of the Franchise Agreement, Defendant Northern Invasion agreed that it would pay Plaintiff "all damages, costs and expenses, including reasonable attorneys' fees, incurred by [Plaintiff] in connection with obtaining any remedy available to [Plaintiff] for any violation of [the Franchise Agreement.]" (*Id.* at 47 (ECF Pagination)). That obligation extends to Defendant O'Connell pursuant to the Guaranty. (*Id.* at 64 (ECF Pagination)).

"In determining whether [a] request for attorneys' fees is reasonable, the Court must calculate a 'lodestar' amount equal to the number of hours reasonably expended multiplied by a reasonable hourly rate." *Sundesa, LLC v. Tejarah Int'l Inc.*, No. 20-2609, 2020 WL 6781579, at

*1 (D.N.J. Nov. 17, 2020) (citing *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998)). "In making this calculation, the Court must 'carefully and critically evaluate the hours and the hourly rate set forth by counsel.'" *Id.* (quoting *J&J Snack Foods, Corp. v. Earthgrains Co.*, No. 00-6230, 2003 WL 21051711, at *6 (D.N.J. May 9, 2003)). Here, Plaintiff's counsel has provided a declaration setting forth the hourly rates of the attorneys who provided legal services, a general description of those services, and the total number of attorney hours spent on the matter. (D.E. No. 8-1). Finally, counsel represents that Plaintiff spent a total of $705.00 in costs, including the $405.00 filing fee, a fee for service of process, and "ancillary costs." (*Id.* at 2).

Counsel has not provided a further breakdown of their services (i.e., information on how long attorneys spent on specific tasks). Nor has counsel itemized the costs incurred litigating this matter (other than specifying the amount spent on filing fees). Without this information, the Court cannot make an informed determination as to whether the fees and costs incurred were objectively reasonable. Finally, the Court notes that Plaintiff's counsel advised that they intended to file "a Second Affidavit relating to attorneys' fees and costs upon the close of February billing – in early March 2026." (*Id.* at 2 n.1). Counsel ostensibly sought to file that supplement to capture the time spent preparing Plaintiff's motion for default judgment. To date, Plaintiff has not filed that supplement.

The Court will, therefore, give Plaintiff an opportunity to file an updated application for attorneys' fees and costs. That supplement shall include an itemized description of the time Plaintiff's attorneys spent on various tasks, as well as the specific amounts of all costs Plaintiff seeks to recoup (with appropriate descriptions for each).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for default judgment against Defendant O'Connell **IN-PART**. Specifically, the Court finds that Plaintiff is entitled to recover damages in the amount of $109,476.09. That amount is inclusive of contractual prejudgment interest through the date of this Opinion. Prejudgment interest shall thereafter accrue at the rate of $53.99 per day through the date of judgment. Plaintiff is also entitled to an award of the reasonable attorneys' fees and costs it incurred in litigating this matter. The Court requires additional information regarding those fees and costs, however, before it can issue a final judgment by default. Moreover, in the interest of bringing this matter to a close as efficiently as possible, the Court will require Plaintiff to advise the Court as to its intentions vis-à-vis Defendant Northern Invasion. An appropriate Order accompanies this Opinion.

Date: September 30, 2026

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**